UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSEPH HUDIK,

                    Petitioner,

vs.                                   Case No. 2:05-cv-362-FtM-29DNF
                                      Case No. 2:04-cr-34-FtM-29DNF

UNITED STATES OF AMERICA,

                    Respondent.
_____

### OPINION AND ORDER

         This matter comes before the Court on Defendant's Motion Under
28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a
Person in Federal Custody (Cv. Doc. #1)[1].  The United States filed
its Response (Cv. Doc. #7), and petitioner filed a Reply with
supporting Declarations.  (Cv. Docs. #10-#13.)

### I.

         On May 7, 2004, petitioner Joseph Hudik (petitioner or Hudik)
waived his right to indictment (Cr. Doc. #2) and plead guilty,
pursuant to a Plea Agreement (Cr. Doc. #6), to an Information (Cr.
Doc. #1) charging him with knowing transportation and shipment of
child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and
2252(b)(1).  On August 2, 2004, the Court sentenced petitioner to

_____

         [1]Unless otherwise specified, docket numbers referring to the
criminal case are cited as (Cr. Doc.) and docket numbers referring
to the civil case are cited as (Cv. Doc.).

serve seventy months imprisonment, followed by three years supervised release. (Cr. Doc. #20, p. 10.) Judgment was entered on August 4, 2004. (Cr. Doc. #17.) Petitioner did not file a direct appeal regarding his conviction or sentence, and therefore on August 14, 2004, petitioner's conviction became final. On August 3, 2005, petitioner timely filed this § 2255 motion.

Petitioner makes three arguments in this § 2255 proceeding: (1) Petitioner received ineffective assistance of counsel regarding his decision to plead guilty, his plea agreement, and the sentencing; (2) Petitioner's guilty plea was involuntary; and (3) Petitioner's sentence was illegal under United States v. Booker, 543 U.S. 220 (2005) and its progeny. The Court will address the issues in reverse order.

**II.**

## A.  Illegal Sentence:

Petitioner asserts that he was sentenced in violation of his constitutional rights as outlined in Booker and Blakeley v. Washington, 542 U.S. 296 (2004). Specifically, petitioner asserts that he did not waive his right to a jury trial on the enhancements under UNITED STATES SENTENCING GUIDELINES MANUAL § 2G2.2(b) and the district court imposed a sentence under a mandatory Sentencing Guidelines system that was unconstitutional. (Cv. Doc. #1, p. 7A.)

The Eleventh Circuit held "that *Booker's* [and Blakely's] constitutional rule falls squarely under the category of new rules

-2-

of criminal procedure that do not apply retroactively to § 2255 cases on collateral review." Varela v. United States, 400 F.3d 864, 867-68 (11th Cir. 2005)(citing Schriro v. Summerlin, 124 S. Ct. 2519, 2526-27 (2004)), cert. denied, 126 S. Ct. 312 (2005). Since petitioner's conviction became final on August 14, 2004, prior to the January 12, 2005 decision in Booker, the Booker claim cannot be raised in the § 2255 petition. Accordingly, petitioner's claim that his sentence is illegal is dismissed.

**B.  Involuntary Guilty Plea:**

Petitioner argues that he "did not knowingly and voluntarily enter his guilty plea with a full understanding of its consequences" and "did not understand the nature and necessary elements of the charge he faced." The reasons for this, petitioner asserts, are the failings of his retained attorney. Petitioner asserts that his attorney did not advise, or misadvised, him regarding the appeal waiver provision of his Plea Agreement, the Sentencing Guidelines, the terms "trade" and "trading", and the unconstitutionality of the Sentencing Guidelines. (Cv. Doc. #1, p.6A.) Because the record affirmatively establishes the voluntary and knowing nature of the guilty plea, the motion is denied as to this issue.

**(1)**

The legal principles applicable to this issue are well established. "A guilty plea is more than a confession which admits

-3-

that the accused did various acts.  It is an admission that he committed the crime charged against him.  By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." United States v. Broce, 488 U.S. 563, 570 (1989)(quotations and citations omitted).  For this reason, the United States Constitution requires that a guilty plea must be voluntary and defendant must make the related waivers knowingly, intelligently and with sufficient awareness of the relevant circumstances and likely consequences. United States v. Ruiz, 536 U.S. 622, 629 (2002); Hill v. Lockhart, 474 U.S. 52, 56 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n.13 (1976).  After a criminal defendant has plead guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only attack the voluntary and knowing character of the guilty plea, Tollett v. Henderson, 411 U.S. 258, 267 (1973); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992), or the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty.  United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986).

To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. United States v. Mosley, 173 F.3d

-4-

1318, 1322 (11th Cir. 1999). Rule 11 explicitly directs the district judge not to accept a plea without determining these "core concerns." Therefore, on review the court is "warranted in regarding the court's acceptance of the plea as a positive finding on each [component of the Rule]." United States v. Buckles, 843 F.2d 469, 472 (11th Cir. 1988), cert. denied, 490 U.S. 1099 (1989).

A defendant who fails to object to a Rule 11 error has the burden of satisfying the plain-error rule, and a reviewing court may consult the whole record when considering the effect of any error on substantial rights. United States v. Vonn, 535 U.S. 55, 74-75 (2002). A petitioner "will rarely, if ever, be able to obtain relief for Rule 11 violations under § 2255," and such relief is available "only in the most egregious cases." United States v. Dominguez Benitez, 124 S. Ct. 2333, 2239 n.9 (2004).

Finally, "the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

**(2)**

On August 7, 2003, a federal search warrant was executed at petitioner's residence by the Federal Bureau of Investigation (FBI). (Cr. Doc. #6, p. 17.)  Petitioner's computer and disks were seized, and subsequent examination revealed numerous images of child pornography and adult pornography.  (Id. at 17-19.)  After being advised of his Miranda rights, petitioner provided a recorded statement to an FBI agent.  (Id. at 19.)  In the statement petitioner admitted to possessing and distributing child pornography; identified a screen name he used with an AOL account; stated that he discovered child pornography about three years before, and obtained all his child pornography from on-line chatrooms.  Petitioner stated that he got "listed" while in chatrooms and the child pornography was sent to him via attachments to emails.  Petitioner identified the CD entitled "F" as being the CD on which he saved child pornography that he used to trade with other people on-line.  (Id.)

On April 21, 2004, petitioner signed a written Plea Agreement (Cr. Doc. #6) and initialed each page.  As petitioner would later tell the magistrate judge, he had discussed the Plea Agreement with his attorney and had read every page before signing and initialing the Plea Agreement.  Among other things, the Plea Agreement identifies the offense to which petitioner will plead guilty (Cr. Doc. #6, p. 1); sets forth the elements and maximum penalties for this offense (Id. at 2); waives petitioner's right to appeal his sentence directly or collaterally (Id. at 13); confirms that the

-6-

guilty plea is being made freely and voluntarily, that petitioner understands the nature of the offense, the elements, and the maximum penalties, and that petitioner had "complete satisfaction with the representation and advice received from defendant's undersigned counsel" (Id. at 14); and sets forth facts which petitioner certifies are true (Id. at 15-19.)

On April 22, 2004, the government filed the one-count Information (Cr. Doc. #1), a signed Waiver of Indictment (Cr. Doc. #2), a Consent (Cr. Doc. #3) to proceed before the magistrate judge, and the Plea Agreement.  On May 7, 2004, the magistrate judge conducted the initial appearance, waiver of indictment, arraignment and guilty plea colloquy.

At the change of plea hearing (Cr. Doc. #19) the government summarized the charge in the Information and the maximum penalties, and petitioner told the magistrate judge he understood the charge and penalties and had read the Information.  (Id. at 3.) Petitioner stated he understood he was entitled to be indicted by a grand jury on the charge before proceeding further, but stated he wished to waive indictment and had signed a waiver form after discussing waiver with his attorney. (Id. at 3-4.)  The magistrate judge found petitioner's waiver to be made freely and voluntarily. (Id. at 4.)

Petitioner stated that he wished to plead guilty to the one-count Information.  (Id. at 4.)  Petitioner was advised that the Court would ask him questions in order to determine that he

understood the charge and maximum penalties, that his guilty plea
was made freely and voluntarily, and that there was a factual basis
to support the guilty plea. (Id. at 4-5.) Petitioner was advised
that he could confer privately with his attorney at any time during
the plea. (Id. at 5.) Petitioner was then placed under oath, and
was advised of his obligation to tell the truth and that false
statements could be prosecuted for perjury. (Id.) Petitioner said
he understood. (Id.) Petitioner was also told that his testimony
during the plea colloquy could be used against him in any further
proceedings. (Id.)

Petitioner answered some biographic questions, and stated he
was not currently under the influence of any drugs, alcohol, or
medication, had not used any such thing in the last 48 hours, had
never been treated for any type of mental illness or the addiction
to drugs or alcohol, and was under the care of a physician for high
blood pressure and Pagent's disease, but was not under the care of
a psychiatrist. (Id. at 6-7.) Petitioner stated his medication
did not cloud his understanding of the proceedings and that he
clearly understood the proceedings, what he was doing, and the
importance of the proceeding. (Id. at 7.) Petitioner stated that
to his knowledge he did not suffer from any type of mental or
emotional disability. (Id.)

Petitioner re-confirmed that he had received a copy of the
Information, had read it, had discussed it with his attorney, and
had enough time to do so. (Id. at 8.) Petitioner stated that

-8-

there was nothing he asked his attorney to do that he had not done, and that he was satisfied with the services of his attorney. (Id. at 8.)  Petitioner stated that no one had threatened him, or promised him anything, or coerced him to induce him to enter his plea.  (Id.)  Petitioner acknowledged that his attorney had discussions with the government which resulted in a written Plea Agreement, and that his guilty plea was the result of those discussions. (Id. at 8-9.) Both counsel for defendant and counsel for the government affirmed that there was no question as to petitioner's competency to enter a guilty plea.  (Id. at 9.)

Petitioner was handed the original written Plea Agreement, and petitioner stated he had initialed every page and had signed the last page.  (Id. at 9.)  Petitioner stated that he had read the Plea Agreement, discussed it with his attorney, and understood it before he signed it.  (Id. at 9-10.)  Petitioner stated that the Plea Agreement contained all the promises that were made by the government, and there were no oral promises which had not been reduced to writing in the Plea Agreement.  (Id. at 10-11.)  Both the government attorney and defense counsel confirmed that no verbal promises existed.  (Id. at 11.)

The magistrate judge then read the charge again, and petitioner stated he understood the charge.  (Id. at 11-12.)  The magistrate judge again advised petitioner of the maximum penalties, and petitioner stated he understood the penalties.  (Id. at 12.) Petitioner stated that he had discussed the Sentencing Guidelines

with his attorney. (Id.)  The magistrate judge advised petitioner that while petitioner may guess where he falls under the Sentencing Guidelines and his attorney may have an idea where he thinks petitioner falls, the Court was not able to determine the Sentencing Guideline range applicable to him until a Presentence Report had been completed. (Id. at 13.) Petitioner stated that he understood this, and understood that it would be up to the Court to determine at that time what sentence would be imposed. (Id.)  The magistrate judge also informed petitioner that the Court may need to resolve disputed facts or matters contained within the Presentence Report, which petitioner stated he understood. (Id. at 13-14.)  The magistrate judge also told petitioner that at this point in the proceedings it was unlikely his attorney could specifically tell him where he fell within the Sentencing Guidelines, and that if the estimate counsel gave petitioner was not correct petitioner would not be able to withdraw his guilty plea. (Id. at 14.)  Petitioner stated he understood this. (Id.) The magistrate judge also told petitioner that the Court had the authority under certain circumstances to impose a sentence that is either more or less severe than called for by the Sentencing Guidelines, which petitioner stated he understood. (Id.)

The magistrate judge then discussed the waiver of sentence appeal provision, stating "by entering into this plea agreement you have limited your rights to appeal by virtues of the plea agreement." (Id. at 14-15.)  Petitioner stated he understood this.

(<u>Id.</u> at 15.)  The court continued: "And specifically you've agreed to waive your right to appeal your sentence directly or indirectly on any grounds except for an upward departure by the sentencing judge, a sentence above the statutory maximum, a sentence that would be in some way a violation of law apart from the guidelines, or the applicability of the safety valve provision, and that you can only be released from this waiver if the Government exercises its right of appeal."  (<u>Id.</u> at 15.)  Petitioner stated he understood this (<u>id.</u>) and was making the waivers knowingly and voluntarily.  (<u>Id.</u> at 16.)

The magistrate judge fully advised petitioner of his rights and that he would be giving up the rights by pleading guilty.  (<u>Id.</u> at 17-21.)  The magistrate judge then advised petitioner of the four elements which must be proved beyond a reasonable doubt, which petitioner stated he understood.  (<u>Id.</u> at 21-22.)  The magistrate judge drew petitioner's attention the factual basis in the Plea Agreement, and asked if there was anything about the factual basis to which petitioner objected; petitioner replied "No, ma'am."  (<u>Id.</u> at 22.)  The magistrate judge then asked: "They're aren't any corrections that you wish to make at this time?" to which petitioner again responded "No., ma'am."  (<u>Id.</u>)  When asked to state in his own words what he did that made him guilty of the offense, petitioner began by stating "I got on the computer and I got into this chat room, list room, and everybody was trading pornography and child porn got involved."  (<u>Id.</u> at 23.)  Petitioner

then responded to specific factual questions from the court, including that he had informed the FBI agent in the interview what he had been doing with regard to the lists and chat rooms. (<u>Id.</u> at 23-25.)  The magistrate judge then inquired: "Is there anything else that you wanted to tell me, Mr. Hudik, about the case at this time?" to which petitioner stated "No."  (<u>Id.</u> at 25.)  Petitioner then confirmed his desire to plead guilty (<u>id.</u>), and said "No" when the magistrate judge asked: "Is there anything else that you want to ask your attorney that bears on your plea of guilty at this time?"  (<u>Id.</u> at 25-26.)

Petitioner was asked how he pled to Count One, and he stated "Guilty."  (<u>Id.</u> at 26).  Petitioner told the magistrate judge that he was pleading guilty freely and voluntarily.  (<u>Id.</u> at 26.)

The magistrate judge found that petitioner's plea of guilty was made knowingly, voluntarily and intelligently, and was not the results of any threats or promises except for those contained in the Plea Agreement.  (<u>Id.</u> at 26.)  The magistrate judge recommended that the guilty plea be accepted, and no objections were filed to this recommendation.   The district court accepted the recommendation and adjudicated petitioner guilty.  (Cr. Doc. #14.)

**(3)**

It is clear from the record that petitioner's claim that his guilty plea was not made knowingly, voluntarily, and with an understanding of its consequences is without merit.  Petitioner's Plea Agreement, which was initialed on each page and signed by

-12-

petitioner, belies petitioner's claims to the contrary.   In addition, the guilty plea colloquy confirmed the truthfulness of petitioners' statements in the Plea Agreement, and advised petitioner in great detail the three core concerns.   The plea colloquy gave petitioner all the information he needed to enter a proper and well-informed guilty plea.   The alleged errors by defense counsel, discussed below, do not render the guilty plea unknowing or involuntary.  Accordingly, petitioner's claim that his guilty plea was unknowing and/or involuntary is rejected.

## C.   Ineffective Assistance of Counsel:

### (1)

Issues of ineffective assistance of counsel can be raised in a § 2255 proceeding even where petitioner could have raised the issues on direct appeal but failed to do so.  Massaro v. United States, 123 S. Ct. 1690 (2003).  The Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance:  (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland, 466 U.S. at 687-88.  See also Wiggins v. Smith, 123 S. Ct. 2527,

2535 (2003); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).  A court must
"judge the reasonableness of counsel's conduct on the facts of the
particular case, viewed as of the time of counsel's conduct."  <u>Roe</u>
<u>v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) (quoting <u>Strickland</u>, 466
U.S. at 690).  This judicial scrutiny is "highly deferential."  <u>Id.</u>
A court must adhere to a strong presumption that counsel's conduct
falls within the wide range of reasonable professional assistance.
<u>Strickland</u>, 466 U.S. at 689-90.  An attorney is not ineffective for
failing to raise a meritless issue.  <u>United States v. Winfield</u>, 960
F.2d 970, 974 (11th Cir. 1992).  In light of the general principles
and presumptions applicable to ineffective assistance of counsel
claims, the cases in which habeas petitioners can prevail are few
and far between.  <u>Chandler v. United States</u>, 218 F.3d 1305, 1313-14
(11th Cir. 2000)(en banc), <u>cert. denied</u>, 531 U.S. 1204 (2001).

**(2)**

The government asserts that petitioner has waived most of his
claims of ineffective assistance of counsel by virtue of a waiver
provision in his Plea Agreement.  Petitioner's Plea Agreement
contained the following provision:

> The defendant understands and acknowledges that the
> defendant's sentence will be determined and imposed in
> conformance with the Comprehensive Crime Control Act of
> 1984 and the federal sentencing guidelines.  Defendant is
> also aware that a sentence imposed under the sentencing
> guidelines does not provide for parole.  Knowing these
> facts, the defendant agrees that this Court has
> jurisdiction and authority to impose any sentence up to
> the statutory maximum set forth for the offense and
> pursuant to the sentencing guidelines and expressly
> waives the right to appeal defendant's sentence, directly

> or collaterally, on any ground, except for an upward departure by the sentencing judge, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

(Cr. Doc. #6, ¶ 5.)  As summarized above, the magistrate judge highlighted this waiver provision in the plea colloquy, specifically questioned petitioner concerning the knowing and voluntary nature of the waiver, and determined that petitioner knew about the waiver provision and had entered into the waiver agreement knowingly and voluntarily.  (Cr. Doc. #19, pp. 14-15.)

"An appeal waiver is valid if a defendant enters into it knowingly and voluntarily.  We have consistently enforced knowing and voluntary appeal waivers according to their terms."  United States v. Bascomb, 451 F.3d 1292, 1294 (11th Cir. 2006)(citing United States v. Bushert, 997 F.2d 1343, 1350-51 (11th Cir. 1993)).  In order to establish that the waiver was knowing and voluntary, the government must demonstrate either "(1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver."  United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir. 2005)(citations and internal quotations omitted), cert. denied, 544 U.S. 1041 (2005).  The waiver can include the waiver of the right to appeal difficult or debatable legal issues and even blatant

-15-

error.  United States v. Frye, 402 F.3d 1123, 1129 (11th Cir. Ala.
2005), cert. denied, 125 S. Ct. 2986 (2005).  This can include
Apprendi[2]/Booker/Blakely issues.  United States v. Frye, 402 F.3d
at 1129; United States v. Grinard-Henry, 399 F.3d at 1296; United
States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir. 2005).

     Further, "a valid sentence-appeal waiver, entered into
voluntarily and knowingly, pursuant to the plea agreement,
precludes the defendant from attempting to attack, in a collateral
proceeding, the sentence through a claim of ineffective assistance
of counsel during sentencing." Williams v. United States, 396 F.3d
1340, 1342 (11th Cir. 2005).  Such a waiver provision, however,
does not preclude claims of ineffective assistance of counsel which
relate to the validity of the guilty plea or the waiver provision
itself.  Cowart v. United States, 139 Fed. Appx. 206, 208 (11th
Cir. 2005)(citing United States v. Copeland, 381 F.3d 1101, 1105
(11th Cir. 2004)).

     The Court finds that petitioner, as he told the magistrate
judge, entered into the appeal waiver provision of his Plea
Agreement knowingly and voluntarily.  Petitioner stated that prior
to the plea colloquy he read the provision in the Plea Agreement,
understood it, and initialed the page containing the provision.
The provision was called to petitioner's attention during the
guilty plea colloquy, and petitioner again said he understood it

---

     [2]Apprendi v. New Jersey, 530 U.S. 466 (2000).

and that his waiver was voluntary.  The Plea Agreement referred to the waiver of petitioner's right to challenge his sentence "directly or collaterally" (Cr. Doc. #6, p. 13); the magistrate judge explained this as "directly or indirectly." (Cr. Doc. #19 at 15.)  The Court finds the appeal waiver is enforceable.

The Court also finds that the waiver provision is broad enough to include the Apprendi-Booker argument, and waives ineffective assistance of counsel claims related to sentencing.  The provision in Williams was from the Middle District of Florida and was virtually identical to the provision in this case.  Therefore, petitioner is barred from raising these issues in the § 2255 proceeding.

### (3)

As it relates to the plea negotiations or the waiver provision itself, petitioner asserts that: his attorney performed insufficient investigation into the facts of the case, never interviewed petitioner regarding his conduct in obtaining the pornographic images, performed no legal analysis into the consequences of the plea such as the applicability of Blakely and SENTENCING GUIDELINES MANUAL § 2G2.2(b)(2), and failed to advise petitioner of the legal significance of the words used in the plea agreement concerning "trade" and/or "trading."  Petitioner asserts that counsel accepted a plea agreement from the government which contained a factual stipulation to § 2G2.2(b)(2) that was without a sufficient factual basis.  Petitioner asserts that his attorney

-17-

advised him to enter a Plea Agreement that stipulated to more than the government could prove, and waived rights he did not understand or misunderstand.  Petitioner also asserts that his attorney did not determine prior to the plea that he suffered from a severe medical condition (Pagent's disease) that made him especially susceptible to abuse in prison, and therefore did not negotiate for consideration of this in the plea agreement.  Petitioner further asserts that his attorney failed to perform a sufficient legal analysis prior to the plea hearing, and misinformed him that the worst case scenario was 33 months incarceration.   Further, petitioner alleges that his attorney did not advise him of the consequences of the appeal waiver provision or the meaning of "collateral challenge," or that he would be prevented from bringing any collateral attacks to his sentence, or from challenging ineffectiveness by counsel after the guilty plea, or from challenging his sentence based on subsequent changes in constitutional law such as <u>Booker</u>.  Petitioner alleges that his attorney did not adequately explain the plea agreement's provisions regarding substantial assistance departures, or to pursue such a departure prior to the entry of the guilty plea.

The Court concludes the record establishes that petitioner has shown neither deficient performance or prejudice as it relates to his attorney.  While petitioner now faults his attorney's pre-plea factual investigation, the facts were well established and were not in dispute by petitioner.  Petitioner made a statement to the FBI

agent setting forth his involvement; he confirmed this statement in the written Plea Agreement; and he orally advised the magistrate judge of facts consistent with the <u>Mirandized</u> statement during the guilty plea colloquy.

Defense counsel's legal analysis regarding <u>Blakely</u> was not deficient. <u>Blakely</u> was decided on June 24, 2004, between the time of petitioner's guilty plea and the sentencing. By the time of sentencing, no Eleventh Circuit case had held that <u>Blakely</u> required a change in the sentencing practices within the Eleventh Circuit. Indeed, shortly after sentencing the Eleventh Circuit held that <u>Blakely</u> did <u>not</u> require any such change. <u>United States v. Reese</u>, 382 F.3d 1308 (11th Cir. 2004). The reasoning of <u>Blakely</u> was not extended to the Sentencing Guidelines until the January 12, 2005 decision in <u>Booker</u>. Counsel is not required to predict a change in law in order to satisfy constitutional standards.

Petitioner also faults counsel in connection with the applicability of Sentencing Guidelines Manual § 2G2.2(b)(2)(2003), the legal significance of the words "trade" or "trading" in the Plea Agreement, and that counsel accepted a Plea Agreement which contained a factual stipulation to § 2G2.2(b)(2) that was without a sufficient factual basis. A two level enhancement was applied under § 2G2.2(b)(2)(E) because the offense involved distribution of child pornography. Petitioner consistently stated (to the FBI agent and to the magistrate judge) that he was trading child pornography. The application notes state that "distribution" means

"any act . . . related to the transfer of material involving the sexual exploitation of a minor." § 2G2.2 n. 1.  The facts admitted by petitioner to the FBI was the foundation for the Plea Agreement, not counsel's deficient performance.  When the magistrate judge asked him to state the facts of his offense conduct in his own words, petitioner spoke about trading child pornography over the internet.  The stipulated facts in the Plea Agreement was what petitioner admitted to the FBI.  The record of the case refutes petitioner's belated claims of ineffective assistance of counsel with regard to these issues.

As discussed above in connection with the voluntariness of the guilty plea, petitioner fully understood his rights, including the sentence appeal waiver.  The record affirmatively refutes petitioners claims to the contrary.

Petitioner also claims that his attorney did not determine prior to the plea that he suffered from a severe medical condition and was ineffective in failing to negotiate some consideration for this condition in the Plea Agreement.  The record reflects that defense counsel knew at least during the plea colloquy that petitioner suffered from Pagent's disease.  (Cr. Doc. #19 at 7.) Defense counsel also argued at sentencing that the Pagent's disease should be a basis for a departure.  (Cr. Doc. #20, pp. 5-6.)  The Court declined to reduce the sentence because of this.  The record refutes any basis for ineffective assistance of counsel, either as to the performance prong or the prejudice prong.

Assuming counsel informed petitioner that his prediction under the Sentencing Guidelines was 33 months, the magistrate judge insured that petitioner was aware that this prediction could not be relied upon. As summarized above, the magistrate judge specifically discussed any predictions by counsel, and told petitioner the Sentencing Guidelines could not be calculated until after preparation of a Presentence Report. Petitioner told the magistrate judge he understood this, and thus was not erroneously induced to plead guilty. Arbelaez v. United States, 344 F. Supp. 137, 1381-1383 (S.D. Fla. 2004) (Finding that "the standard by which a court determines whether a defendant was prejudiced by her attorney's misstatements is whether the defendant was erroneously induced to believe that she would benefit from pleading guilty") (Internal quotation and citation omitted).

Similarly, the waiver of sentence appeal provision, even if not fully explained by counsel, was fully explained by the magistrate judge, including using "indirectly" instead of the more legalistic "collaterally." Petitioner stated he understood the provision to be a waiver of all such claims, and that the waiver was knowing and voluntary.

The record establishes that petitioner knew the meaning of substantial assistance, even though there is no claim that he ever provided such assistance. There is no basis for now claiming ineffective assistance of counsel. In any event, substantial

assistance was still available to petitioner under FED. R. CRIM. P. 35 after he retained new counsel to pursue the § 2255 motion.

Having reviewed the record, the Court finds that trial counsel's performance was not deficient and, in any event, did not result in prejudice. Therefore, petitioner's ineffective assistance of counsel claims are denied.

Accordingly, it is now

**ORDERED**:

1. Defendant's Motion Under 28 U.S.C. s. 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. #1) is **DENIED** as to the ineffective assistance of counsel claims that relate to the validity of the guilty plea, plea negotiations, and sentence appeal waiver provision itself, and is otherwise **DISMISSED** as to the Booker claim and the remaining claims relating to ineffective assistance of counsel.

2. The Clerk of the Court shall enter judgment accordingly and close the civil file. The Clerk is further directed to file a copy of the civil judgment in the corresponding criminal case for record purposes.

**DONE AND ORDERED** at Fort Myers, Florida, this   16th   day of May, 2007.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record

-22-